## CHARLES WILSON

### v.

## EDWARD HILL.

1. Where a persistent trespasser is irresponsible, so that recovery of dam-·ages cannot be had from him at law, equity may interfere by injunction to ·restrain him from further trespassing.

2. Seizure of fishing apparatus in virtue of the statute (*Rev. p. 430 § 27*), in :the case of a persistent trespasser who disputes each seizure, is not adequate ·remedy at law which will preclude the interference of this court by injunction.

3. Under a general demurrer to a bill for want of equity, defect in form will not be considered. An objection to form must be special and specify the ·defect with reasonable certainty and distinctness.

On bill and demurrer.

*Mr. H. N. Barton* and *Mr. William Y. Johnson*, for the de-·murrant.

*Mr. G. D. W. Vroom*, for the complainant.

THE CHANCELLOR.

The bill alleges that the complainant is seized and possessed ·of a certain tract of land in the river Delaware, known as "Bar

No. 1," situate in the Sixth ward of the city of Trenton, and particularly described in the grant made by Franklin Woolman to George W. Wilson and others, in March, 1874; that the bar lies along the channel of the river, adjacent to the same, and is well adapted for the purposes of a fishery, being covered with broken stones or pebbles and free from all obstructions to seine fishing, and, together with the river channel opposite thereto, constitutes a fishery or pool within the meaning of the provisions of the statute regulating the fisheries in the river Delaware (*Rev. p. 426*); that the fishery has been occupied by the complainant and those under whom he claims for a long time, the complainant having been in peaceable and continuous possession of it for fourteen years; that on the 24th day of April, 1888, in pursuance of the provisions of the statute last mentioned the complainant gave the clerk of the court of common pleas of Mercer county a description in writing of his pool or fishing-place and the extent thereof, and the number of men generally employed in fishing the same, and also entered into bond as that statute requires, and thereupon received from the clerk a certificate provided for by the statute; that the defendant, Edward Hill, during the fishing season and between the latter part of April and the 15th of June, assisted by other men and with boats, nets and other appliances, and without the complainant's permission and against his will, entered the pool and fishery and cast his net and hauled it upon the complainant's lands and thereby took a large number of fish, which he carried away; that upon the commission of the first trespass of this kind, the complainant caused the fish warden to notify the defendant that, contrary to law, he was trespassing upon the rights of another; that upon a second trespass of the same kind the complainant caused the defendant's boats and seines to be seized (*Rev. p. 43* § *27*), and had information of the seizure made before two justices of the peace according to the provisions of the statute, and thereupon the defendant caused the property so taken to be replevied; that the defendant then committed several other and similar trespasses, and the complainant caused his boat and seines to be again seized, and the defendant retook them by force and

again trespassed, whereupon the complainant commenced a suit in tort for the trespasses against him; that the defendant again trespassed as before and now threatens to continue to do so.

The bill also alleges that the defendant is not possessed of any property from which damages that may be recovered against him can be made, and prays that he may be enjoined from the commission of further trespasses.

The defendant demurred to this bill upon three grounds—first, because it shows that the complainant has full and adequate remedy at law; second, because it fails to exhibit matter of· equity to entitle the complainant to relief; and, third, because it does not show that the legal remedies, which were available, have been exhausted.

The remedies that the complainant may have at law are—first, an action in tort for damage, because of the trespass; second, a suit for the recovery of penalties prescribed by the acts to regulate the fisheries in the Delaware river &c. (*Rev. p. 426*); and, third, the seizure of the boats, seines &c. with which the defendant committed the trespasses.

The efficacy of the first two of these remedies depends upon the pecuniary responsibility of the defendant. If he were a man of substance from whom damages recovered might be made, these remedies would be ample, for his trespasses work no pecuniary injury that may not be compensated in damages. The injury is to the temporary possession of the fishery, not to its permanent value. It is substantial only in that it takes away the usufruct, which is considerable, having money worth.

It is, then, only the irresponsibility of the defendant which makes these remedies practically valueless and inadequate to the complainant, but that is sufficient to give him a standing in equity. *West* v. *Walker, 2 Gr. Ch. 290 note b; Kerlin* v. *West, 3 Gr. Ch. 449; Bank of Chenango* v. *Cox, 11 C. E. Gr. 452; Hodgson* v. *Duce, 2 Jur. (N. S.) 1014.*

The third remedy which the complainant may have, by the seizure of the defendant's apparatus, reporting the seizure to justices of the peace and obtaining from them, after trial, an order for the sale of the property so taken (*Rev. p. 428 § 27*),

24

also appears to be inadequate. The property seized may be of little value. Out of the proceeds of its forced sale the costs of seizure and of a trial must be paid, after which the complainant will have merely a moiety of the remainder of the money realized. It is problematic whether that moiety would ever be of sufficient value to afford him adequate compensation for his losses. But in addition to these suggestions, when it is remembered that in the effective exercise of the remedy considered, a seizure, trial and sale must attend each trespass, it becomes apparent that the use of the remedy against a persistent trespasser would soon involve the complainant in a multiplicity of legal proceedings which might be profitless and probably would be most vexatious to him. As in the very case in hand, they might be complicated by replevin suits and forcible resistance. There is not the least guarantee that he would come out of the litigation itself without loss, and much less, that it would afford him adequate redress for the injury he would suffer from the trespass. I do not think that the complainant's legal remedies are adequate.

The view I have taken of the substantial nature of the defendant's trespasses and of the insufficiency of the complainant's legal remedy makes plain the equity of the bill, and disposes of the second ground of demurrer, save in one particular. Under the general objection to the bill for want of equity, it is insisted that it does not appear that the complainant has title to the property trespassed upon. The claim is, that the court will recognize the fact that in the sixth ward of Trenton the tide ebbs and flows in the Delaware; that such waters, with the land under them, are held by the state in trust for the public uses of navigation and fishery by all its inhabitants, and that the complainant cannot have an exclusive right of fishery therein, especially as he does not show that his alleged fishery is annexed to the shore. In short, the defendant seeks, at this point, to question generally the titles of the several fisheries of the Delaware river, particularly of those which exist in ownership, different from the ownership of the adjoining shore, by grant from the shore-owner.

The right to several fisheries in the Delaware river has repeatedly been recognized by statute and judicial decision in this.

Wilson v. Hill.

·state. *Gough* v. *Bell, 2 Zab. 441, 462, 480; Bell* v. *Gough, 3 Zab. 624, 666; Bennett* v. *Boggs, Baldw. 60; Attorney-General* v. *Delaware and Bound Brook Railroad Co., 12 C. E. Gr. 1, 10; Fitzgerald* v. *Faunce, 17 Vr. 536, 591.*

In the fourth volume of *Griffith's Law Reg. 1290 note* (published in 1821), it is said, that from the earliest times these fisheries have been the subject of exclusive enjoyment and alienation like any other property. They have been regarded as descending to heirs, and are devised, conveyed, leased and partitioned, and dower and curtesy are had in them. They are frequently dissevered from the plantation, in devises, alienations and leases, and they are established and maintained at great ·expense and labor. Since the publication of *Griffith's Law Register* there has been no change in the common recognition of a private property in these fisheries. It appears to me to be now too late to question the right by which this species of property is held. If, as Chief-Justice Green says, in *Gough* v. *Bell*, that right rests " in custom or local usage variant from the common law," it has gathered strength since he uttered those words, forty years ago.

But I think that this question cannot be considered under the present demurrer. The bill alleges that the complainant is "seized and possessed" of bar No. 1, which constitutes a fishery, and that he has described it to the clerk of the court of common pleas, so that he may have the protection which the statute regulating the fisheries of the Delaware affords.

The bill does not allege that the complainant's title to the fishery came through the grant by Woolman, mentioned in the bill. That grant is referred to merely for a particular description of the bar No. 1. The allegation of title is a sweeping conclusion, which, upon the argument on this demurrer, is conclusive that the complainant has title, if it is possible for him by any means to have it. Proper pleading, I think, would require the ·complainant to set out as facts the means by which he acquired his title, instead of this conclusion. But objection on account of his failure to do so cannot be made upon a general demurrer to the bill for want of equity. Under such a demurrer defect in

form will not be considered. *Marsh* v. *Marsh, 1 C. E. Gr. 391;* *Miller* v. *Jamison, 9 C. E. Gr. 41.* All causes of demurrer must be expressed. *Story Eq. Pl.* § *443 ; Mitf. Pl.* § *213 ;* *Rule 225.* An objection to form must be special and specify the defect with reasonable certainty and distinctness. *Story Eq. Pl.* § *456.* The primary, and, indeed, the only question,. then, to be here considered, is, whether, by any means, the complainant may have the title he asserts. I do not conceive any circumstances under which it would have been impossible, in law, for him to have acquired title. He could take by grant. from an individual owner, and if the property belonged to the state, that sovereignty might also grant it to him. *Bennett* v. *Boggs, Baldw. 60; Gough* v. *Bell, 2 Zab. 441, 447; Paul* v. *Hazleton, 8 Vr. 106 ; Wooley* v. *Campbell, 8 Vr. 163 ; Gould Wat. 189.*

All that; is necessary to say concerning the third ground of demurrer is, that if, as we have seen, the law does not afford the complainant adequate remedies, it is not necessary that he should exhaust them.

The demurrer will be overruled.